UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ELIZABETH VALDEZ,

Plaintiff,

-against-

WG BOWERY LLC AND
HIYAKE JAPANESE BBQ INC,

Defendants.
-------------------------------------------------------------x

**Civil Case No: 1:26-cv-5524**

**COMPLAINT**

**JURY TRIAL REQUESTED**

## COMPLAINT

Plaintiff Elizabeth Valdez ("Plaintiff"), by and through her counsel, Hanski Partners LLC, hereby files this Complaint against WG Bowery LLC ("Landlord Defendant") and Hiyake Japanese BBQ Inc ("Tenant Defendant" and collectively with Landlord Defendant, "Defendants"), and alleges upon information and belief as follows:

## INTRODUCTION

1. Plaintiff is an individual with a disability who requires a wheelchair for mobility.

2. Defendants own, operate, and lease a place of public accommodation, the restaurant known as Gyu Ichiro.

3. Gyu Ichiro specializes in Japanese cuisine, particularly Japanese BBQ and Sushi.

4. Gyu Ichiro is located within the commercial building with a street address of 135 Bowery ("135 Bowery").

5. Defendants created and maintain Gyu Ichiro with architectural elements that function as barriers to wheelchair access ("architectural barriers").

6. Gyu Ichiro is therefore not readily accessible to and usable by individuals with disabilities that use wheelchairs ("accessible").

7. By creating and maintaining architectural barriers at Gyu Ichiro, Defendants denied, and continue to deny, Plaintiff full and equal enjoyment of the bakery café's goods, services, facilities, privileges, advantages, and accommodations ("equivalent access") based on disability.

8. Plaintiff attempted to dine at Gyu Ichiro twice during the 2026 calendar year.

9. Each time, Plaintiff personally encountered architectural barriers that denied her equivalent access to Gyu Ichiro.

10. Indeed, the architectural barriers Plaintiff encountered denied her any opportunity to dine at Gyu Ichiro.

11. As a result, Plaintiff did not dine at Gyu Ichiro.

12. By creating and maintaining architectural barriers at the restaurant, Defendants denied Plaintiff equivalent access to Gyu Ichiro.

13. Defendants discriminate against Plaintiff in violation of Title III of the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12181 *et seq.* and its implementing regulations; the New York Human Rights Law ("State HRL"), Article 15 of the New York Executive Law; the New York Civil Rights Law ("CRL"), § 40 *et seq.;* and the New York City Human Rights Law ("City HRL"), Title 8 of the Administrative Code of the City of New York.

14. Plaintiff files this Complaint against Defendants so they will cease discriminating against her in violation of the ADA, State HRL, CRL, and City HRL (collectively, the "Human Rights Laws").

15. Plaintiff seeks equitable, injunctive, and declaratory relief together with attorneys' fees, costs, and expenses pursuant to the Human Rights Laws.

16. Plaintiff also seeks civil penalties from Defendants pursuant to the CRL, and monetary damages from Defendants pursuant to the State HRL and the City HRL.

## JURISDICTION & VENUE

17. This Court is vested with jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 and §1343 because this is an action for declaratory and injunctive relief pursuant to the ADA.

18. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because the events giving rise to this action occurred in the State of New York, at the real property and the building thereon located in New York County in which the Gyu Ichiro is located.

19. This Court has supplemental jurisdiction over Plaintiff's State HRL and City HRL claims pursuant to 28 U.S.C. § 1367(a) as they are related to her claims arising under the ADA.

## FACTS COMMON TO ALL CAUSES OF ACTION

*The Parties*

20. Plaintiff is a resident of the State and City of New York.

21. Plaintiff suffers from a physical condition that renders her unable to walk using her musculoskeletal system and which restricts Plaintiff's body motion range and movement.

22. Unable to walk on her own, Plaintiff uses a wheelchair for mobility.

23. Landlord Defendant, a Delaware limited liability company, is a private (non-governmental) entity.

24. Landlord Defendant conducts business within the State of New York including at 135 Bowery.

25. Landlord Defendant owns and operates the retail portion of 135 Bowery.

26. Landlord Defendant leases space within the retail portion of 135 Bowery to Tenant Defendant for use and occupancy as a restaurant.

27. The space Landlord Defendant leases to Tenant Defendant for Gyu Ichiro contains at least two customer levels.

28. One of Gyu Ichiro's customer levels is located on 135 Bowery's ground floor, the other is located on 135 Bowery's mezzanine level.

29. Tenant Defendant, a New York business corporation, is a private (non-governmental) entity.

30. Tenant Defendant conducts business within the State of New York including at 135 Bowery.

31. Tenant Defendant leases space at 135 Bowery from Landlord Defendant for use and occupancy as a restaurant.

32. Tenant Defendant owns and operates the restaurant known as Gyu Ichiro in the space it leases from Landlord Defendant at 135 Bowery.

33. Landlord Defendant and Tenant Defendant are parties to a written agreement for the lease of Gyu Ichiro's space.

*135 Bowery*

34. 135 Bowery is located in the lower east side of Manhattan, in the neighborhood known as Chinatown.

35. Within Chinatown, 135 Bowery is situated on the parcel of land located on the eastern side of Bowery between Broome Street and Grand Street in Manhattan, on Tax Lots 1001 and 1002 within Tax Block 423.

36. Ownership of 135 Bowery is subdivided in to two condominium units, Commercial Unit One (the "Retail Unit") and Commercial Unit Two (the "Office Unit") pursuant to a Declaration of Condominium, dated July 6, 2015, recorded with the Office of the City Register, NYC

Department of Finance on September 11, 2015. Declaration of 135 Bowery Condominium, CRFN 2015000319296 (N.Y. Cty. September 11, 2015) (the "Declaration").

37. 135 Bowery consists of nine floors and a mezzanine level.

38. Ownership of various floors, or portions of floors, is subdivided between the Retail Unit, within which retail uses are allowed, and the Office Unit.

39. The owners of the Retail Unit and the Office Unit each have an undivided interest in 135 Condominium's common elements.

40. The Retail Unit is located on the cellar, first floor, mezzanine level, second, third and a portion of the fourth floor of 135 Bowery.

41. The space Gyu Ichiro occupies is in the Retail Unit.

42. Gyu Ichiro's public entrance from the adjoining public sidewalk is distinct from the public entrance for the rest of the Retail Unit's spaces.

43. The public entrance for the rest of the Retail Unit's spaces from the adjoining public sidewalk is separate from public entrance for the Office Unit.

44. To the extent that the public entrance to Gyu Ichiro is not part of the Retail Unit, but a common element of the condominium pursuant to the Declaration, Gyu Ichiro's public entrance is a limited common element which Landlord Defendant is required to maintain, repair and replace as the owner of the Retail Unit.

*Plaintiff's Connection to Gyu Ichiro*

45. Plaintiff resides approximately 10 minutes wheelchair rolling distance from Gyu Ichiro.

46. Plaintiff passes by Gyu Ichiro's location as part of her typical life activities and travels through the Lower East Side, the area of Manhattan in which Gyu Ichiro is located.

47. Plaintiff was interested in dining at Gyu Ichiro as she knew Gyu Ichiro served Japanese BBQ and sushi, both of which Plaintiff enjoys.

48. Plaintiff's interest in dining at Gyu Ichiro was further aroused when she saw that Gyu Ichiro advertised an all you can eat Japanese BBQ and sushi menu on signage outside the restaurant.

49. Desiring the cuisine offered at Gyu Ichiro, Plaintiff twice attempted to dine at Gyu Ichiro in the 2026 calendar year, including on March 2026,

*Plaintiff's 1st Visit to Gyu Ichiro*

50. Plaintiff made her first visit to Gyu Ichiro during the first quarter of the 2026 calendar year.

51. During Plaintiff's first visit to Gyu Ichiro she personally encountered architectural barriers at Gyu Ichiro's public entrance and inside Gyu Ichiro.

52. The architectural barriers Plaintiff encountered at the public entrance included a doorway without the required level and clear maneuvering clearances at Gyu Ichiro's public entrance which is necessary to safely and independently operate a door in a wheelchair.

53. The architectural barriers at the public entrance doorway Plaintiff encountered made it difficult for her as a wheelchair user to operate the door and enter Gyu Ichiro.

54. Although it was difficult for Plaintiff to operate the entrance door, she managed to enter Gyu Ichiro.

55. Once inside, Plaintiff encountered drinking and dining surfaces whose dimensions made them inaccessible to her as a wheelchair user.

56. First, Plaintiff encountered a bar with drinking and dining surfaces more than 34 inches above the floor level, and without any clear floor spaces for wheelchairs, making the drining and dining surfaces inaccessible to her as a wheelchair user.

57. Plaintiff then saw an employee stationed near the bar and asked for a table so she could dine.

58. As the host escorted Plaintiff into the dining area, Plaintiff encountered more architectural barriers, including drinking and dining surfaces at tables above steps, and without unobstructed clear spaces beneath and adjacent to the table.

59. As a wheelchair user, Plaintiff cannot traverse steps and requires unobstructed clear spaces beneath and adjacent to the table to position herself at a table to drink and dine.

60. The table which the host offered to Plaintiff was confined on three sides; (*i.e.*, within an alcove), with the table's sole open side adjoining the circulation path to the table.



Alcove Table

61. The host then asked Plaintiff to transfer out of her wheelchair to one of the fixed benches on either side of the table.

62. Plaintiff looked at the table and saw that the dining surface was inaccessible to her as a wheelchair user because architectural barriers prevented Plaintiff from positioning herself to dine at the table surface.

63. The architectural barriers at the table, including fixed bench seating and obstructions underneath the table, impeded the clear floor space under and adjacent to the table dining surface necessary for Plaintiff, as a wheelchair user, to position herself to dine at the table surface.

64. Plaintiff informed the host that it was not possible for her to transfer from her wheelchair to the table seating as requested.

65. Plaintiff then asked the host for a different table.

66. The host told Plaintiff that all the other tables at Gyu Ichiro were located above steps, and that the table to which he brought Plaintiff was the only floor level table at Gyu Ichiro.

67. Plaintiff informed the host that although it would be difficult for her to dine at the table she would make do and dine at the table's open side, the only part of the alcove table not obstructed by fixed seating or a wall.

68. The host then informed Plaintiff that she could not dine at the restaurant unless she transferred to the bench seating at the sides of the table.

69. As the alcove table's open side was the only place within Gyu Ichiro with a dining surface that a wheelchair user could possibly dine, Plaintiff was astonished that the restaurant was denying her accommodation request.

70. Plaintiff asked the host for the reason he would not allow her to dine at the open side of the table.

71. The host informed Plaintiff that she would be in the way of other customers and staff if she dined at the open side of the table.

72. Plaintiff was upset that she was denied the opportunity to dine at Gyu Ichiro because there were no wheelchair accessible tables (dining surfaces) at the restaurant.

73. Gyu Ichiro's refusal to accommodate Plaintiff's request to dine at the table's open side upset her even more, as the accommodation she requested was made necessary by Gyu Ichiro's failure to provide any accessible dining surfaces.

74. Plaintiff left distressed that she was denied the opportunity to dine at Gyu Ichiro due to disability.

*Plaintiff's 2nd Visit to Gyu Ichiro*

75. Although Plaintiff was upset that she was denied the opportunity to dine at Gyu Ichiro on her first visit, Plaintiff still desired to dine there.

76. Determined to dine at Gyu Ichiro, on or around March 31, 2026, Plaintiff made a second attempt to dine at Gyu Ichiro.

77. When Plaintiff arrived at Gyu Ichiro she encountered the same architectural barriers at the public entrance and the drinking and dining surfaces at the bar as during her first visit to Gyu Ichiro.

78. When Plaintiff went inside Gyu Ichiro she saw the host and asked to dine at a table.

79. As the host escorted Plaintiff through Gyu Ichiro's interior, Plaintiff encountered the same interior architectural barriers as during her first visit to Gyu Ichiro, drinking and dining surfaces at tables situated above steps and without unobstructed clear spaces beneath and adjacent to the table.

80. The host then offered Plaintiff the same alcove table she was offered during her first visit.

81. When they arrived at the table, Plaintiff said she would dine at the open side of the table.

82. Plaintiff then explained the reason she needed to dine at the open side of the table, hoping the host would allow her to do so if he understood that she could not transfer to the bench seating at the table due to her disability.

83. Unfortunately, Plaintiff was too optimistic, as the host denied her accommodation request and informed Plaintiff that she would be in the way of other customers and staff if she dined at the open side of the table.

84. Plaintiff left distressed that she was again denied the opportunity to dine at Gyu Ichiro due to disability.

***Plaintiff's Direct Injury from Her Personal Encounters with Architectural Barriers***

85. The architectural barriers Plaintiff encountered at Gyu Ichiro made the restaurant inaccessible to her as a wheelchair user, denying her equivalent access based on disability.

86. Defendants created and maintain the architectural barriers at Gyu Ichiro.

87. Defendants denied Plaintiff the opportunity to patronize Gyu Ichiro by creating and maintaining architectural barriers to Gyu Ichiro.

88. Defendants denied Plaintiff equivalent access through the architectural barriers they created and maintain at Gyu Ichiro.

89. Plaintiff suffered a direct injury from Defendants' conduct when she personally encountered architectural barriers at Gyu Ichiro on her two visits to the restaurant.

90. Tenant Defendant also denied Plaintiff the opportunity to patronize Gyu Ichiro by denying her request for a reasonable accommodation; specifically, Plaintiff's request that she be allowed to dine at the open side of the table as it was not possible for her to transfer to the bench seating at the side of the table as Gyu Ichiro's host demanded.

91. Plaintiff suffered a direct injury from Tenant Defendant's denial of her reasonable accommodation request on her two visits to Gyu Ichiro.

***Plaintiff's Deterrent Injury Due to Her Awareness of Architectural Barriers***

*Past Deterrent Injury*

92. Since Plaintiff's second visit to Gyu Ichiro in March 2026, she has wanted to dine at Gyu Ichiro as she enjoys dining out and she likes Japanese BBQ and sushi, the cuisine served at Gyu Ichiro.

93. However, Plaintiff was deterred from dining at Gyu Ichiro due to the architectural barriers she personally encountered at Gyu Ichiro.

*Ongoing Deterrent Injury*

94. Plaintiff continues to desire to dine at Gyu Ichiro.

95. However, Plaintiff is aware that there are architectural barriers at Gyu Ichiro that deny her equivalent access to Gyu Ichiro.

96. Plaintiff is deterred by Defendants from dining at Gyu Ichiro because she is personally aware that architectural barriers at Gyu Ichiro deny her equivalent access to Gyu Ichiro.

97. Plaintiff is aware that these architectural barriers continue to exist, therefore Plaintiff continues to be deterred from patronizing Gyu Ichiro.

98. The architectural barriers Plaintiff is aware of include the architectural barriers Plaintiff previously encountered, and the additional architectural barriers identified in this Complaint.

99. Defendants deny Plaintiff the opportunity to dine at Gyu Ichiro as they created and continue to maintain architectural barriers at Gyu Ichiro.

100. Defendants continue to deter Plaintiff from patronizing Gyu Ichiro by maintaining these architectural barriers.

101. Defendants cause Plaintiff to suffer an ongoing injury by maintaining architectural barriers at Gyu Ichiro.

102. Defendants refuse to remove the architectural barriers at Gyu Ichiro that deny Plaintiff equivalent access.

103. But for the architectural barriers Plaintiff would dine at Gyu Ichiro.

104. After the architectural barriers are removed, Plaintiff will patronize and dine at Gyu Ichiro.

105. By maintaining architectural barriers at Gyu Ichiro, Defendants deny Plaintiff equivalent access to Gyu Ichiro due to disability, thereby continuing to discriminate against Plaintiff in violation of the Human Rights Laws.

106. Defendants continue to maintain the architectural barriers at Gyu Ichiro, those that Plaintiff personally encountered, and those that Plaintiff learned of after she visited Gyu Ichiro

107. Defendants cause Plaintiff to suffer an ongoing injury as they continue to deter Plaintiff from visiting Gyu Ichiro by maintaining these architectural barriers.

***Plaintiff's Ongoing Connection to Gyu Ichiro***

108. Plaintiff resides 10 minutes wheelchair travel time from Gyu Ichiro.

109. Plaintiff is in Gyu Ichiro's immediate vicinity one or more times a month as part of her social, leisure, and life activities.

110. Plaintiff patronizes places restaurants that are accessible to her.

111. Plaintiff patronizes places to eat and drink at least 10 times a year.

112. Plaintiff enjoys Japanese cuisine, including Japanese BBQ and sushi, both of which are served at Gyu Ichiro.

***Alterations were Performed to Gyu Ichiro' Space at 135 Bowery***

113. 135 Bowery was constructed prior to January 26, 1993.

114. However, at various times after January 26, 1992, 135 Bowery and the space Gyu Ichiro occupies and uses at 135 Bowery was remodeled, renovated, and reconstructed in a manner that affected or could have affected the way the space, or part of the space, is used (*i.e.*, "Altered").

115. The public entrance and interior areas of Gyu Ichiro' space were Altered after January 26, 1992.

116. In or around the 2008 and 2009 calendar years an elevator was installed in 135 Bowery "for ADA Compliance" to provide accessibility to the levels above and below the ground floor.

117. In or around the 2003 calendar year, Gyu Ichiro's space was partitioned into separate areas and rooms, and structural work was performed to the flooring system.

118. In or around the 2017 calendar year, Gyu Ichiro's space was specifically Altered so for use as a restaurant.

119. The Alterations performed to buildout the space as a restaurant included the construction of a new storefront and public entrance; the installation of new walls partitioning the space; plumbing work to create restrooms; the installation of a bar with a drinking and dining counter, and the creation of a commercial kitchen, including installing a fire suppression system and sprinklers.

120. In and around the 2022 calendar year Gyu Ichiro's space was Altered again when new partitions and flooring were installed.

121. In addition, in and around the 2022 calendar year fixtures, including BBQ Grills at numerous tables, were installed in Gyu Ichiro's space.

122. The space was Altered multiple times without providing the minimum required physical accessibility necessary for Plaintiff, as a disabled wheelchair user, to have equivalent access to the space.

123. Therefore, although Altered, Gyu Ichiro's physical space is not accessible.

124. Gyu Ichiro is a place of public accommodation as defined by the ADA, State HRL, CRL, and City HRL, because it is a restaurant or other establishment serving food or drink.

125. As a place of public accommodation, Gyu Ichiro is required to be accessible pursuant to the ADA, State HRL, and City HRL because non-accessible place of public accommodation does not provide equivalent access to persons such as Plaintiff, a disabled individual that uses a wheelchair.

126. To comply with the ADA, CRL, State HRL, and City HRL, Landlord Defendant, the property owner and lessor of a place of public accommodation, is required to provide Plaintiff, as a disabled individual, equivalent access to Gyu Ichiro.

127. To comply with the ADA, CRL, State HRL, and City HRL, Tenant Defendant, the lessee and owner/operator of a place of public accommodation, is required to provide Plaintiff, as a disabled individual, equivalent access to Gyu Ichiro.

128. The ADA, CRL, State HRL, and City HRL prohibits the property owner, lessor, and lessee of a place of public accommodation, as well as the operator and owner of the place of public accommodation (each a "public accommodation", and a "covered entity"[1]) from discriminating based on disability with respect to the place of public accommodation. ADA, 42

---

[1] A "covered entity" is a person required to comply with section 8-107 of the City HRL the section which prohibits unlawful discriminatory practices. N.Y.C Admin. Code § 8-102.

U.S.C. § 12181 and 28 C.F.R. § 36.104; State HRL, Executive Law § 296(2)(a); N.Y. Civil Rights Law §§ 40 and 40-c, and the City HRL, N.Y.C Admin. Code § 8-102.

129. Each Defendant is a public accommodation: Landlord Defendant is a public accommodation as it owns and leases the physical space within 135 Bowery in which Gyu Ichiro is located; Tenant Defendant is a public accommodation as it owns and operates Gyu Ichiro and leases the space in which Gyu Ichiro is located from Landlord Defendant.

130. The ADA, State HRL, and City HRL impose joint and several liability on the owner, lessor, and lessee of the location in which a place of public accommodation is located, as well as upon the operator and owner of the place of public accommodation.

131. Each Defendant is vicariously liable for the discriminatory acts and omissions of their employees and agents.

132. Pursuant to the Human Rights Laws, Gyu Ichiro, an Altered place of public accommodation is required to be readily accessible to and usable by disabled individuals that use wheelchairs.

133. Defendants' failure to comply with the ADA, State HRL, and City HRL infringes upon Plaintiff's rights to be free from discrimination based on disability.

134. Defendants offer ambulatory individuals the opportunity to dine within Gyu Ichiro but deny Plaintiff this opportunity based on disability as the dining area is located on a level that is not wheelchair accessible.

135. By denying Plaintiff equivalent access to Gyu Ichiro through their maintenance of architectural barriers, Defendants unlawfully discriminate against Plaintiff based on disability.

136. To the extent Defendants assert that they do not deny Plaintiff equivalent access to Gyu Ichiro as they can assist Plaintiff in overcoming the architectural barriers that deny her safe

independent entry into Gyu Ichiro, Defendants' demand that Plaintiff seek assistance to dine at Gyu Ichiro, instead of providing the required wheelchair access is unlawful discrimination in violation of the Human Rights Laws.

137. Defendants provide ambulatory individuals the opportunity to dine independently at Gyu Ichiro but deny Plaintiff this opportunity based on disability.

138. Any demand by Defendants that Plaintiff request assistance to dine at Gyu Ichiro instead of providing a means of independent access to Gyu Ichiro's dining surfaces and other facilities is unlawful discrimination against Plaintiff based on disability.

139. Plaintiff intends to visit Gyu Ichiro again and dine therein after the architectural barriers are removed and Gyu Ichiro is made readily accessible and usable as required by the ADA, State HRL, and City HRL.

140. Architectural barriers which Plaintiff encountered include, but are not limited to, the following violations of the ADA Standards[2] and the NYC Standards[3] (together the "Accessibility Standards"):

---

[2] "ADA Standards" means to (i) the 1991 ADA Standards for Accessible Design codified in 28 CFR part 36 Appendix A (the "1991 ADA Standards" or "1991 ADA"); and (ii) the 2010 Standards for Accessible Design codified in 36 CFR part 1191 Appendices B and D, and 28 CFR part 36 Appendix A, subpart D (the "2010 ADA Standards" or "2010 ADA").

[3] NYC Standards" means (i) the accessibility provisions of the 1968 New York City Building Code, N.Y.C. Admin. Code § 27-292.1 *et seq*. (the "1968 BC"), inclusive of the technical standard for accessibility referenced in the 1968 BC, ANSI A117.1-1986 as modified by 1968 BC Reference Standard RS 4-6 (the "1968 Ref Std"); (ii) the accessibility provisions of the 2008 New York City Building Code, N.Y.C. Admin. Code § 28-1101 *et seq*. and Appendix E (the "2008 BC"), inclusive of the technical standard for accessibility referenced in the 2008 BC, ICC A117.1-2003 (the "2008 Ref Std"); (iii) the accessibility provisions of the 2014 New York City Building Code, N.Y.C. Admin. Code § 28-1101 *et seq*. and Appendix E (the "2014 BC"), inclusive of the technical standard for accessibility referenced in the 2014 BC, ICC A117.1-2009 (the "2014/2022 Ref Std);2 and (iv) the accessibility provisions of the 2022 New York City Building Code, N.Y.C. Admin. Code § 28-1101 *et seq*. and Appendix E (the "2022 BC"), inclusive of the technical standard for accessibility referenced in the 2022 BC, 2014/2022 Ref Std.

<u>*Public Entrance*</u>

A. Gyu Ichiro's public entrance is not accessible.
*Defendants fail to provide that at least 50% of the public entrances are accessible. 1991 ADA § 4.1.3(8)(a)(i).*
*Defendants fail to provide that at least 60% of the public entrances are accessible. 2010 ADA § 206.4.1.*
*Defendants fail to provide that primary entrances/public entrances are accessible. 1968 BC § 27-292.5(a); 2008 BC § 1105.1; 2014 BC § 1105.1; and 2022 BC § BC 1105.1.*

B. The required maneuvering clearances for pushing open Gyu Ichiro' public entrance door using a forward approach are not provided.
*Defendants fail to provide a level and clear floor or ground surface for a forward approach, of 48 inches perpendicular to the door for 12 inches parallel to the door at the latch side for a door with a closer (or for 24 inches parallel to the door for a latch side approach). See 1991 ADA § 4.13.6 and Figure 25; 2010 ADA § 404.2.4.1 and Figure 404.2.4.1; 1968 Ref Std § 4.13.6; 2008 Ref Std § 404.2.3; and 2014/2022 Ref Std § 404.2.3.*

<u>*Interior Accessible Route*</u>

C. The required wheelchair turning space (circular or T-shaped) free and clear of obstructions is not provided along the circulation path to the table drinking and dining surfaces.
*Defendants fail to provide a clear space 60" minimum in diameter to allow a wheelchair to make a 180-degree turn. See 1991 ADA § 4.2.3; 2010 ADA § 304.3.1; 1968 Ref Std § 4.2.3; 2008 Ref Std § 304.3.1 and 2014/2022 Ref Std § 304.3.1.*
*Defendants fail to provide a clear T-shaped space within a minimum 60" square area to allow a wheelchair to make a 180-degree turn. See 1991 ADA § 4.2.3.*
*Defendants fail to provide a clear T-shaped space within a minimum 60" square area, having arms and a base 36 inches wide minimum, with each arm of the T clear of obstructions 12 inches minimum in each direction and the base of the T clear of obstructions 24 inches minimum. See 2010 ADA § 304.3.2; 1968 Ref Std § 4.2.3; 2008 Ref Std § 304.3.2; and 2014/2022 Ref Std § 304.3.2.*



T-Shaped Space with Arms & Base

Dining Areas

D. Defendants fail to provide the minimum required number of accessible drinking and dining surfaces at tables and bar counters.
*Where dining surfaces for the consumption of food or drink are provided, at least 10 percent of the total number of seating and standing spaces, but not less than one, of each type of dining surfaces shall be accessible and be distributed throughout the facility and located on a level accessed by an accessible route. See 2022 BC § 1108.2.9.1.*
*Defendants fail to provide that at least 5% of the dining surfaces provided to customers are accessible. See 1991 ADA § 5.1; 2010 ADA § 226.1; 1968 BC § 27-292.10(a)(3); 2008 BC § 1109.11; and 2014 BC § 1109.10.*

E. Defendants fail to provide a minimum 60" long portion of the bar counter with two accessible seating spaces, with such spaces not located within 40" of either end of the bar counter.
*Where seating is provided at dining or drinking counters, at least one 60" long portion of the counter shall be provided with two accessible seating spaces, with such spaces not be located within 40" of either end of the bar counter. See 2022 BC § 1108.2.9.2.*

F. Defendants fail to disperse accessible dining surfaces throughout Gyu Ichiro's dining areas.
*Defendants fail to provide that accessible dining surfaces shall be dispersed throughout the space or facility containing dining surfaces. See 1991 ADA § 5.1 2010 ADA § 226.2; 2008 BC § 1108.2.9.1; 2014 BC § 1108.2.9.1; and 2022 BC § 1108.2.9.1.*

G. Defendants fail to identify accessible dining surfaces with the International Symbol of Accessibility (to the extent Defendants claim they provide accessible dining surfaces.
*Defendants fail to provide that accessible seating shall be identified by the International Symbol of Accessibility. See 2008 BC § 1110.1(9); 2014 BC § 1110.1(11); and 2022 BC § 1111.1(12).*

H. An accessible route is not provided to any of Gyu Ichiro's alcove and booth tables.
*Defendants fail to provide an accessible route to accessible dining surfaces. See 1991 ADA §§ 4.1.3(18) and 4.3.2; 2010 ADA § 206.2.4; 1968 BC § 27-292.10(a)(3); 2008 BC § 1108.2.9; 2014 BC § 1108.2.9 & 2022 BC § 1108.2.9.*

I. None of the dining surfaces at alcove tables have the required knee and toe clearances for a forward approach as the required clear spaces are obstructed by chairs, posts, table legs, and fixtures installed underneath the tables.
*Defendants fail to provide a clear floor space of 30 inches by 48 inches positioned for a forward approach and the required knee and toe clearance at accessible work surfaces and/or table surfaces. See 1991 ADA § 4.32.2; 2010 ADA § 902.2; 1968 Ref Std § 4.30.2; 2008 Ref Std § 902.2; and 2014/2022 Ref Std § 902.2.*

141. Architectural barriers at Gyu Ichiro (which Plaintiff has been made aware of prior to filing her Complaint) include, but are not limited to, the following violations of the ADA Standards and the NYC Standards:

<u>*Dining Surfaces*</u>

A. No accessible route is provided any of Gyu Ichiro's table dining areas, including the eastern dining area with a stepped entryway.
*Defendants fail to provide an accessible route to all dining areas. See 1991 ADA §5.4; 2010 ADA § 206.2.5; 1968 BC § 27-292.5(c); 2008 BC § 1108.2.9; 2014 BC § 1108.2.9 and 2022 BC § 1108.2.9.*

B. None of the dining surfaces at tables have the required knee and toe clearances for a forward approach to dining surfaces as the required clear spaces are obstructed by chairs, posts, and table legs.
*Defendants fail to provide (due to chairs, table pedestals or table legs) a clear floor space of 30 inches by 48 inches positioned for a forward approach and the required knee and toe clearance at accessible work surfaces and/or table surfaces. See 1991 ADA § 4.32.2; 2010 ADA § 902.2; 1968 Ref Std § 4.30.2; 2008 Ref Std § 902.2; and 2014/2022 Ref Std § 902.2.*

<u>*Bathroom Facilities*</u>

C. The bathroom marked with signage for individuals with disabilities is not accessible.
*Defendants fail to provide accessible toilet facilities. 1991 ADA § 4.1.3(11); 2010 ADA § 213.1; 1968 BC § 27-292.12; 2008 BC § 1109.2; 2014 BC § 1109.2; and 2022 BC § 1109.2*

D. The doorway at bathroom lacks the required level and clear maneuvering clearances at the pull side of the entrance.
*Defendants fail to provide an accessible door with level maneuvering clearances. 1991 ADA § 4.13.6; 2010 ADA § 404.2.4;1968 Ref Std § 4.13.6; 2008 Ref Std § 404.2.3; and 2014/2022 Ref Std § 404.2.3.*

E. The coat hook on the bathroom door is located more than 48 inches above the finished floor.
*Defendants fail to provide that the coat hook is located no greater than* 48 inches above the finished floor. *2010 ADA § 603.4; and 1991 ADA § 4.25.3*

F. The toilet flush control is located on top of the toilet tank which requires reaching over the toilet to operate.
*Defendants fail to provide that the toilet flush control is located on the open side of the toilet area. 2010 ADA § 604.6*
*Defendants fail to provide that the toilet flush control is located on the wide side of toilet area. 1991 ADA § 4.16.5.*

G. The lavatory in the toilet room lack protected hot water and drain pipes.
*Defendants fail to provide accessible lavatories and/or sinks with water supply and drain pipes that are insulated or otherwise configured to protect against contact. See 1991 ADA §§ 4.19.4 and 4.24.6; 2010 ADA § 606.5; 1968 Ref Std § 4.19.4; 2008 Ref Std § 606.6; 2014/2022 Ref Std § 606.6.*

142. A full inspection of Gyu Ichiro will reveal the existence of other barriers to access.

143. To properly remedy Defendants' unlawful discrimination and avoid piecemeal litigation, Plaintiff requires a full inspection of Gyu Ichiro to catalogue the other architectural barriers at Gyu Ichiro and have Defendants remediate them.

144. Plaintiff gives notice that she intends to amend her Complaint to include any violations of the Accessibility Standards or Human Rights Laws that are discovered during an inspection of Gyu Ichiro.

**FIRST CAUSE OF ACTION**
**(DISCRIMINATION IN VIOLATION OF**
**THE AMERICANS WITH DISABILITIES ACT)**

145. Plaintiff re-alleges and incorporates each allegation contained in the above paragraphs as if fully set forth herein.

146. Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA. 42 U.S.C. § 12102; 28 C.F.R. § 36.105(a) and (b).

147. As a direct and proximate result of Plaintiff's disability, Plaintiff requires a wheelchair for mobility and has restricted use of her arms and hands.

148. "Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are 'public accommodations' subject to" the ADA. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(b).

149. The ADA imposes joint and several liability on each of the owner of a building in which a place of public accommodation is located, the lessor of space in a building to a place of public accommodation, the lessee of space in a building for a place of public accommodation, and the owner or operator of the place of public accommodation. *See* 28 C.F.R. § 36.201(b).

150. Therefore, pursuant to the ADA, each of the building owner, lessor, lessee, owner, and operator of Gyu Ichiro, a place of public accommodation is liable to Plaintiff. *See Id.*

151. None of the Defendants can avoid liability under the ADA by transferring their obligations to comply with the ADA to another entity. 28 C.F.R. 36.201(b).

152. Defendants continue to subject Plaintiff to disparate treatment by denying Plaintiff full and equal opportunity to access Gyu Ichiro on the basis of disability.

153. Defendants' policies and practices continue to subject Plaintiff to disparate treatment and disparate impact.

154. By failing to comply with the law in effect for decades, Defendants have articulated to Plaintiff, as a disabled person, that she is neither desired nor welcome as a patron of Gyu Ichiro.

155. Design and construction work was performed to build out Gyu Ichiro space as an eating and drinking establishment but the Alterations were not performed so that the space complies with the 1991 ADA Standards or the 2010 ADA Standards.

156. Because Gyu Ichiro does not comply with the ADA Standards it is not readily accessible to and usable by Plaintiff due to her mobility disability. *See* 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. § 12183(a)(1).

157. Defendants discriminate against Plaintiff in violation of the ADA as they built a place of public accommodation that is not accessible to Plaintiff based on disability. *See* 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. § 12183(a)(1).

158. Defendants fail to provide an integrated and equal setting for the disabled at Gyu Ichiro in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

159. In violation of 28 C.F.R. §§ 36.402 and 36.406 and 42 U.S.C. §12183(a)(2), Alterations were not performed in a manner that made the space occupied by Gyu Ichiro compliant with the ADA Standards to the maximum extent feasible.

160. Defendants failed to provide "readily accessible and usable" paths of travel to the altered primary function areas of Gyu Ichiro in violation of 28 C.F.R. § 36.403.

161. Defendants failed to make all readily achievable accommodations and modifications to remove barriers to access at Gyu Ichiro in violation of 28 C.F.R. § 36.304.

162. It has been and remains readily achievable for Defendants to make Gyu Ichiro accessible by complying with the ADA Standards.

163. By failing to remove the barriers to access where it is readily achievable to do so, Defendants have discriminated against Plaintiff on the basis of disability in violation of 42 U.S.C. § 12182(a), § 12182(b)(2)(A)(iv), and 28 C.F.R. § 36.304.

164. Alternatively, should Defendants allege that the removal of any of the barriers to access was, and remains, not readily achievable, Defendants have violated the ADA by failing to provide Plaintiff with reasonable alternatives to barrier removal. 28 C.F.R. § 36.305.

165. Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 *et seq.*, and 28 C.F.R § 36.101 *et seq.*

166. Defendants continue to discriminate against Plaintiff in violation of the ADA by maintaining a place of public accommodation that is not compliant with the ADA Standards, and therefore not accessible.

**SECOND CAUSE OF ACTION**
**DISCRIMINATION IN VIOLATION OF**
**THE NEW YORK HUMAN RIGHTS LAW**

167. Plaintiff realleges and incorporates each allegation contained in the above paragraphs as if fully set forth herein.

168. Plaintiff suffers from various medical conditions that separately and together prevent her from exercising the life activities of both walking and body motion range.

169. Plaintiff therefore suffers from a disability within the meaning of the Executive Law § 292(21).

170. In 2019, the New York State legislature enacted legislation which amended the construction provision of the State HRL, Executive Law § 300, to require that the protections and provisions be liberally construed. NY Session Law 2019, ch 160.

171. The 2019 amendment requires the State HRL's provisions and the protections it provides to be "construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed". Executive Law § 300.

172. By amending the Executive Law § 300 to mirror the text of the New York City Local Civil Rights Restoration Act of 2005, Local Law 85 of 2005, the New York State legislature confirmed the legislative intent to abolish parallel construction between the State HRL and related Federal anti-discrimination laws.

173. Defendants have and continue to subject Plaintiff to disparate treatment by denying her equal opportunity to use their place of public accommodation all because she is disabled.

174. Defendants discriminated against Plaintiff in violation of State HRL, Executive Law § 296(2), by creating or maintaining an inaccessible place of public accommodation.

175. Each Defendant has aided and abetted others in committing disability discrimination.

176. Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of State HRL, Executive Law § 296(2)(c)(iii).

177. In the alternative, Defendants have failed to provide Plaintiff with reasonable alternatives to barrier removal as required in violation of State HRL, Executive Law § 296(2)(c)(v).

178. It would be readily achievable (as defined by the State HRL) to make Defendants' place of public accommodation fully accessible.

179. It would not impose an undue hardship or an undue burden on Defendants to make their place of public accommodation fully accessible.

180. As a direct and proximate result of Defendants' unlawful discrimination in violation of State HRL, Plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

181. Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION DISCRIMINATION IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

182. Plaintiff re-alleges and incorporates each allegation contained in the above paragraphs as if fully set forth herein.

183. Plaintiff suffers from medical conditions that separately and together impair Plaintiff's bodily systems - in particular, the life activity of both walking and body motion range.

184. Due to her impaired bodily functions, Plaintiff has a disability within the meaning of the City HRL. N.Y.C. Admin. Code § 8-102.

**Section 8-107(4)(a)(1)(a) Violations: Denial of Equal Opportunity.**

185. The City HRL guarantees the right of all individuals, regardless of disability, to equal opportunity (*i.e.*, equivalent access) to places of public accommodation.

186. “Equivalent access, in the words of the City HRL, is the opportunity to have “full and equal enjoyment, on equal terms and conditions” to the accommodations, advantages, services, facilities, and privileges of a place of public accommodation. N.Y.C. Admin. Code § 8-107(4).

187. Defendants engage in an unlawful discriminatory practice prohibited by the City HRL as they created and maintain a place of public accommodation, Gyu Ichiro, which is not accessible to Plaintiff due to disability. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).

188. Defendants are also liable for the conduct of their employees and agents which resulted in the creation and maintenance of a place of public accommodation which is not accessible. N.Y.C. Admin. Code § 8-107(13).

189. Because Defendants created and maintain a place of public accommodation that is not accessible to Plaintiff due to disability, Defendants directly and indirectly “refuse, withhold from, or deny” Plaintiff equal opportunity to enjoy the “accommodations, advantages, services, facilities or privileges” of Gyu Ichiro due to her disability.

190. Defendants’ policies and procedures inclusive of their policies of refusing to expend funds to design, create, and maintain an accessible place of public accommodation is a discriminatory practice in violation of City HRL. N.Y.C. Admin. Code § 8-107 (4).

191. Defendants’ failure to construct and maintain an accessible entrance from the public sidewalk to Gyu Ichiro constitutes disability discrimination in a violation of the City HRL. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a); *See* also N.Y.C. Admin. Code § 19-152 and § 7-210.

192. Defendants’ failure to provide an accessible place of public accommodation and consequent denial of equal opportunity to Plaintiff constitutes an ongoing continuous pattern and practice of disability discrimination. in violation of the City HRL. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).

193. Defendants discriminate against Plaintiff as they subject her to disparate impact in violation of the City HRL. N.Y.C. Admin. Code § 8-107(4).

194. Defendants subject Plaintiff to disparate impact as they directly and indirectly deny Plaintiff equal opportunity to enjoy the accommodations, advantages, facilities, and privileges of Gyu Ichiro because of her disability.

195. Defendants' policies or practices, "whether neutral on their face and [or] neutral in intent" result in a disparate impact to the detriment of the individuals with mobility disabilities, the protected class of which Plaintiff is a member. *See* N.Y.C Admin. Code § 8-107(17); and *Levin v Yeshiva Univ.*, 96 NY2d 484, 489(2001).

196. Defendants' failure to comply with the NYC Building Code as well as their failure to expend funds to upgrade and alter Gyu Ichiro to remove obsolete features such as stepped entrances, are policies and practices that have a significantly adverse and disproportionate impact on persons with mobility disabilities, including Plaintiff.

197. Because the result of Defendants' policies and practices is a place of public accommodation that is not accessible to people with mobility disabilities, Plaintiff has demonstrated that Defendants' policy or practice has a disproportionately negative impact on the disabled including Plaintiff.

**Section 8-107(15) Violations: Failure to Provide Reasonable Accommodations.**

198. Defendants discriminate against Plaintiff in violation of the City HRL as they have not made reasonable accommodations that are necessary for persons with mobility disabilities that use wheelchairs. N.Y.C. Admin. Code § 8-107(15)(a).

199. Defendants' failure to make reasonable accommodations include their failure to remove the architectural barriers to access detailed herein so that individuals with mobility

disabilities that use wheelchairs, including Plaintiff, have equal opportunity to enjoy what Defendants offer at Gyu Ichiro.

200. Defendants have known, or should have known, that members of the public, which includes current and prospective patrons of Gyu Ichiro such as Plaintiff, have mobility disabilities that require the use of wheelchairs to ambulate.

201. Defendants have known, or should have known, reasonable accommodations are necessary for persons with mobility disabilities that use wheelchairs to have the equal opportunity to enjoy what Defendants offer at their place of public accommodation, Gyu Ichiro.

202. To the extent Defendants were not obligated to have altered or maintained Gyu Ichiro so that the architectural barriers identified in this Complaint do not exist, it would not cause undue hardship in the conduct of Defendants' business to remove the architectural barriers detailed in this Complaint as a reasonable accommodation for persons with mobility disabilities that use wheelchairs.

203. Defendants cannot demonstrate that it would cause undue hardship in the conduct of their respective businesses to remove the architectural barriers to access detailed herein as a reasonable accommodation for persons with mobility disabilities that use wheelchairs.

204. Defendants' failure to provide reasonable accommodations for persons with disability, inclusive of their failure to remove the barriers to access identified in herein, and Defendants' consequent denial of equal opportunity to Plaintiff, constitutes an ongoing continuous pattern and practice of disability discrimination in violation of the City HRL. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).

**Section 8-130: The City HRL's Construction and Maximally Protective Role.**

205. To further the City HRL's "uniquely broad remedial purposes" (Local Law No. 85 (2005) of City of New York § 7) and to ensure that it the law is "maximally protective of civil rights in all circumstances" (Local Law No. 35 (2016) of City of New York § 1), the New York City Council amended the City HRL's Construction provision, N.Y.C. Admin. Code § 8-130, in 2005 and 2016. Local Law 85 (2005), and Local Law 35 (2016).

206. The 2005 and 2016 amendments confirm that the City HRL is not coextensive with federal or state civil rights laws "regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably worded to provisions of this title, [the City HRL,] have been so construed". N.Y.C. Admin. Code § 8-130(a), as amended by Local Law 85 § 7 and Local Law 35 § 2.

207. The 2005 and 2016 amendments instead provide that the City HRL's protections are cumulative to the protections provided by federal or state civil rights laws, as the City HRL must "be interpreted liberally and independently of similar federal and state provisions" to accomplish the City HRL's uniquely broad and remedial purposes "as one of the most expansive and comprehensive human rights laws in the nation". Rep of Governmental Affairs Div, Comm on Civ Rights at 6 and 8, March 8, 2016, Local Law Bill Jacket, Local Law No. 35 (2016) of City of NY (Adding to Local Law 85 § 1's already explicit language which provided that the obligations imposed on entities subject to the City HRL by "similarly worded provisions of federal and state civil rights laws [are] as a floor below which the City's Human Rights law cannot fall.").

208. The 2016 Amendments to the City HRL additionally direct that "[e]xceptions to and exemptions from the provisions of this title [(the City HRL)] shall be construed narrowly in order to maximize deterrence of discriminatory conduct". N.Y.C. Admin. Code § 8-130(b), as amended by Local Law 35 (2016) § 2.

209. Due to the above-referenced amendments, the City HRL provides significantly greater protections to its protected classes "in all circumstances" than what the ADA and the State HRL (Title 15 of the Executive Law) provide to persons in the same protected classes.

210. Defendants' conduct is therefore subject to a markedly stricter standard under the City HRL than under Federal and state anti-discrimination law.

211. Defendants' liability under the City HRL for their conduct alleged herein must be determined separately and independently from their liability under the ADA or State HRL, to the extent that Defendants escape liability under the ADA or State HRL. N.Y.C. Admin. Code § 8-130, as amended by Local Law 85 and Local Law 35.

212. Conversely to the extent that Defendants' conduct alleged herein violates the ADA or State HRL, Defendants automatically violate the City HRL.

213. Therefore, Defendants' violations of the ADA, the ADA Standards, and the State HRL alleged herein constitute discrimination under the City HRL.

214. Defendants continue to discriminate based on disability in violation of the City HRL (N.Y.C. Admin. Code § 8-107(4)) due to their ongoing violations of the ADA, the ADA Standards, and the State HRL alleged herein.

215. The stricter standards of the City HRL apply in situations where the ADA and the State HRL provisions are comparably worded to the provisions of the City HRL. N.Y.C. Admin. Code § 8-130.

216. Defendants must therefore provide an accessible place of public accommodation, regardless of their obligation to provide accessibility under similarly worded provisions of the ADA or the State HRL.

**Section 8-107(6) Violations: Aid and Abet Discrimination.**

217. In violation of the City HRL, Defendants have and continue to, aid and abet, incite, compel, or coerce each other in each of the other Defendants' attempts to, and in their acts of directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their place of public accommodation, all because of disability. N.Y.C. Admin. Code § 8-107(6).

218. Each Defendant has aided and abetted others in committing disability discrimination.

219. Defendants' conduct constitutes an ongoing and continuous violation of the City HRL.

220. Unless Defendants are enjoined from further violations, Plaintiff will continue to suffer injuries for which there is no adequate remedy at law.

221. Plaintiff will suffer irreparable harm by being denied the accommodations, advantages, facilities, or privileges of the Defendants' place of public accommodation.

222. As a direct and proximate result of Defendants' unlawful discrimination in violation of the City HRL, Plaintiff has suffered, and continues to suffer emotional distress, including humiliation, stress, and embarrassment.

223. Upon information and belief, Defendants' long-standing refusal to make their place of public accommodation fully accessible was deliberate, calculated, egregious, and undertaken with reckless disregard to Plaintiff's rights under the City HRL.

224. By failing to comply with the law in effect for decades, Defendants have articulated to disabled persons such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

225. Defendants engaged in discrimination with willful or wanton negligence, and/or recklessness, and/or a conscious disregard of the rights of others and/or conduct so reckless as to

amount to such disregard for which Plaintiff is entitled to an award of punitive damages pursuant to the City HRL N.Y.C. Admin. Code § 8-502.

226. By refusing to make their place of public accommodation accessible, Defendants have unlawfully profited from their discriminatory conduct by diverting monies they should have used to provide an accessible space to themselves.

227. By refusing to make their place of public accommodation accessible, Defendants have unlawfully benefited from their discriminatory conduct by collecting revenue from a non-compliant space.

228. Defendants continue to take for themselves funds they are required to spend to remediate Gyu Ichiro so that it is accessible.

229. The amounts Defendants diverted to themselves, and the unlawful revenues they gained must be disgorged.

230. Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**(VIOLATIONS OF THE NEW YORK CIVIL RIGHTS LAW)**

231. Plaintiff re-alleges and incorporates each allegation contained in the above paragraphs as if fully set forth herein.

232. The CRL guarantees the rights of all persons in New York to "full and equal accommodations, advantages, facilities and privileges of any places of public accommodation[]…subject only to the conditions and limitations established by law and applicable alike to all persons." N.Y. Civ. Rights Law § 40.

233. The CRL therefore provides that public accommodations cannot "directly or indirectly refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges" of their place of public accommodation. *Id*.

234. The CRL also guarantees all persons in New York "equal protection of the laws of [New York and the City of New York] and specifically protects individual with disabilities from "any discrimination in her or her civil rights … by any other person or by any firm, corporation or institution". *Id*. at § 40-c.

235. Those that discriminate against an individual with a disability are subject to a monetary penalty of $100 - $500 per offense, recoverable by the individual that suffered the discrimination pursuant to the CRL. *Id*. at § 40-d.

236. Defendants discriminated against Plaintiff pursuant to the State HRL and the City HRL.

237. Defendants denied Plaintiff equivalent access to Gyu Ichiro, causing Plaintiff prior injuries, direct and deterrent, on multiple occasions as set forth in this Complaint.

238. Defendants continue to deny Plaintiff equivalent access to Gyu Ichiro inflicting ongoing deterrent injury upon Plaintiff as set forth in this Complaint.

239. Plaintiff is entitled to recover the monetary penalty prescribed by CRL § 40-d for each and every discriminatory violation under the State HRL and the City HRL.

240. As required by CRL § 40-d, notice of this action has been served upon the New York Attorney General.

## INJUNCTIVE RELIEF

241. Plaintiff will continue to experience unlawful discrimination from Defendants' failure to comply with the above-mentioned laws. Therefore, injunctive relief which Orders Defendants

to alter and modify their place of public accommodation to comply with the Accessibility Standards and the Human Rights Laws, is necessary.

242. Injunctive relief is necessary to make Defendants' place of public accommodation readily accessible to and usable by Plaintiff as an individual with a disability that uses a wheelchair in accordance with the above-mentioned laws.

243. Injunctive relief is also necessary to order Defendants to provide auxiliary aids or services, modification of their policies, and/or provision of alternative methods, in accordance with the ADA and the City HRL.

## JURY DEMAND

244. Plaintiff demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter a judgment against the Defendants, jointly and severally, in favor of Plaintiff that contains the following relief:

A. Enter declaratory judgment declaring that Defendants have violated the ADA inclusive of its implementing regulations and the City HRL, and declaring the rights of Plaintiff as to Defendants' place of public accommodation, and Defendants’ policies, practices, and procedures;

B. Issue a permanent injunction ordering Defendants to remediate Gyu Ichiro so that it is accessible to wheelchair users as required by the ADA, State HRL, and City HRL, which includes remediating all violations of the 2010 Standard and the NYC Standards at Gyu Ichiro;

C. Retain jurisdiction over the Defendants until the Court is satisfied that the Defendants' unlawful practices, acts and omissions no longer exist and that Defendants will not repeat their unlawful practices, acts and omissions;

D. Award Plaintiff compensatory damages from Defendants' violations of the City HRL;

E. Award Plaintiff punitive damages to punish and deter the Defendants for their violations of the City HRL;

F. Award Plaintiff the monetary penalties for each act of discrimination in violation of the State HRL and City HRL, per defendant, pursuant to New York State Civil Rights Law § 40-d;

G. Find that Plaintiff is a prevailing party and award reasonable attorney's fees, costs, and expenses pursuant to the ADA and City HRL; and

H. For such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated: June 29, 2026

Respectfully submitted,

**HANSKI PARTNERS LLC**

By:/s/ Adam S. Hanski
Adam S. Hanski, Esq.
Attorneys for Plaintiff
4 International Dr, Ste 110
Rye Brook, NY 10573
Telephone: (212) 248-7400
Email: ash@disabilityrightsny.com